Our next case is 22-1793 and 22-1946 Williamson v. Prime Sports Marketing, Mr. Eaton. Good morning, Your Honors. May it please the Court, Douglas Eaton along with my co-counsel Alvin Pittman on behalf of Ms. Ford and Prime Sports Marketing. I want to start my argument by putting this issue in the proper context here. Zion Williamson is not an athlete who needed the protections of the UAAA. Zion Williamson was the guaranteed number one draft pick in the 2019 NBA draft and had declared at the time that he signed a contract with my clients, had declared that he was going to leave Duke and join the NBA. And there was never any question that that's what's going to happen. He'd been talking about that since high school. So this is a player who was not in need of the protections of the statute, which is designed to protect players who want to continue their collegiate career from inadvertently losing their eligibility. So the Court shouldn't have any concern that any ruling here is going to somehow negatively impact those type of students because that's not what Zion Williamson was. There's his right to go to the NBA. So my clients correctly assumed that this is a player who was going to the NBA. And so they signed a contract with him and they did not need to put in, they did not need to register with the state of North Carolina. Sorry to interrupt, but you make a point and I certainly understand that. But you say that this statute wasn't intended to protect someone like Zion Williamson. But by definition, the statute is intended to protect any athlete who might be contemplating a professional career by warning him or her that if they decide to sign a contract of the kind that Mr. Williamson signed, that there's a potential to lose your eligibility. Why isn't he in that class of athletes? Because Mr. Williamson had no intention of continuing to use his eligibility. Well, he could always change his mind, I suppose, right? There's no record evidence that that would ever was the case. So again, but you raised a good point and it does bring up an issue here that we're talking about. The notice requirement of the statute requires the agent to tell a student athlete, by the way, if you sign this, you will lose your eligibility. But according to the District Court and to be ineligible. And that's simply not the case here. The issue here is whether or not we are entitled to look behind the fact that he played college basketball to determine whether or not the statute applies to him, whether he met the statutory definition of a student athlete. Our contention was that he did not because he took improper benefits prior to coming to Duke. And so therefore, the District Court made a determination, you can't do that, you cannot look behind it. The District Court deferred to, I'm not going to say the findings of a private organization because the NCAA didn't make any findings. They simply accept the certification of the student at Duke University that says he's eligible to play. And they let him play. There's no findings of fact made, there's no adjudication made. But the District Court nevertheless deferred to it. District Courts don't defer under any other circumstances. They don't defer to state courts, they don't defer to administrative agencies, they don't defer to, you know, the EEOC, Division of Labor. But yet, under this one circumstance, we're not going to disturb the fact that he was an eligible student athlete because he played college basketball. There's simply no support in the law for that. The District Court didn't cite to any. And the defendants haven't, I'm sorry, Ms. N. Williamson hasn't cited to any because it doesn't exist. We, however, did cite to two cases from other states that address the UAA as a uniform act, same act in those states as in North Carolina, in which the agents who were subjected to civil fines raised the issue of the ineligibility, in fact, of the athletes on appeal. And in both cases, the appellate court said, if you didn't raise this below, it's too late. They did not say, you can't raise this because they were eligible student athletes at that time, because the NCAA declared them to be eligible. That's not an affirmative defense for you. They acknowledged the existence of the affirmative defense and simply said it was too late. So those cases make it clear, along with the number of cases that courts, state courts and federal courts have addressed the eligibility of student athletes, that you can go behind the NCAA's determination. If you couldn't, how can a student athlete who has been declared ineligible by the NCAA come to a court and say, that was wrong. I want my eligibility back. And that happens all the time. If we go back to the statute, so there are three ways that a student athlete is defined as such in this statute. And the first one is one that seems to me that applies directly to Zion Williamson, that is an individual who engages in any intercollegiate sport. You don't dispute the fact that he was playing basketball for Duke around the time of this transaction, right? That's correct. But I don't think that you can simply say the fact that he played college basketball means that... That's what the statute says. But you have to read the statute in its entirety. It also says a basketball player that's permanently ineligible to play is not a student athlete. Say that again. It says an athlete that is permanently ineligible to play is not a student athlete under this definition. That's the next sentence. Isn't that next sentence referring though to multi-sport athletes? I mean, if you look at the use, in particular, the use of the sort of portion of it in your briefing, it seems to me that that second sentence is not an exception necessarily, but involves multi-sport athletes and essentially saying they retain their eligibility in any sport that they are not ineligible in. Well, two points to that. One, the commentary was not adopted by the North Carolina statute. Two, North Carolina says we don't give any weight to commentary. It's not binding on this. So you read the statute as it's applying only to two-sport athletes. It just says if you're permanently ineligible, then you're not a student athlete. But setting that sentence aside, the first sentence, there's only one way to read it. And it can't be simply that if you play a sport, whether or not you are eligible or ineligible, then you are under the protections of the UAA. The point is to have eligible athletes. And eligible is in that first sentence. It's one of the words in there. So I don't think anybody took the position that the mere fact that he played was enough to give him the protections. You have to be eligible. I mean, that's just the bottom line. So we then have a right to challenge that determination. This can't be the only scenario where a private organization has a finding, again, not a finding, but has accepted certification. And the district court can't look at it. We can't raise it as an affirmative defense. How does your view of the second sentence not render it essentially redundant with the first? Well, to your point, it may be referring, I mean, if you look at the commentary, I absolutely concede it is talking about two sports. But again, North Carolina has special rules when it comes to the commentary. So I don't think we are required to rely on the second sentence to make our argument. The first sentence alone presumes that you are eligible to play the sport. If you are not eligible, then you are not under the protection of the statute. There's no way to look at this and to say an ineligible student athlete who played college basketball is entitled to that because then what's the point of the notice provision? You're telling them if you sign this, you will become ineligible. Well, they're already ineligible. So again, it's designed to protect eligible student athletes. So is it your view that the student becomes ineligible the moment that the alleged violative conduct occurs and not when the relevant institution deems them so? Is that fair? Yes. Would that view not render the act's protections of athletes at least partially ineffective? Let's say there's some unscrupulous agent who manipulates a student into signing a contract. No warnings in the contract. The student is deemed ineligible in your view based on that conduct, correct? Well, yes, Your Honor. After 72 hours, there's a grace period. And that's what this says. But the agent is also in trouble in that scenario. In this case, there was an unscrupulous agent who did sign him to a contract prior to him going into Duke. And that action rendered him ineligible. And there's evidence of that that was put in the motion for leave to amend. And we know we can look behind this because we literally have a situation in the Gatto cases, in the Second Circuit Gatto cases, where the defense raised by these agents was we didn't cause any harm. The assembly never declared these students ineligible. Schools were never penalized. Why are you sending us away for giving improper benefits to these students? And the court said no. When you did that, you made them ineligible and in truth and in fact, you created potential jeopardy for these schools. And that's the crime. So if their theory, the district court's theory is correct, there was no harm because they were never declared ineligible by the schools or the NCAA. And therefore, there shouldn't have been any crime. But that court looked behind and determined that the actions taken by those were ineligible and in fact. And it is indisputable that in those cases, the NCAA never made a finding that those athletes were ineligible. So again, we're stuck with this very unique situation here where the district court says, sorry, we're bound by this. And there's no other case anywhere that says the same thing. None. They're not gonna be able to cite to any case that says that. Doesn't exist. We've got cases that say you can raise the affirmative defense. So this was a judgment on the pleadings and the pleadings that all the court said was you acknowledge that he played college basketball. Did either of the cases that you're referencing, did either of those hold that the athletes were in fact ineligible to compete? The Sloan and the other case. No, they said that the Secretary of State made a finding that the athlete was eligible, which implies that there was a finding of fact in that case. That was the Howard case, I believe. So there's an adjudication there on that issue. And obviously, if there's an adjudication, then evidence has to be presented on whether or not somebody was eligible or not. In the Sloan case, the defendant admitted that he had violated the act. So there wasn't a finding on eligibility. And they said, you're raising this now and it's too late. You've already admitted you violated the act, which means that he was eligible. Because otherwise, if he wasn't eligible, he wouldn't have been entitled to protections under the act. So got a little time left. If you have any more questions on that, I'm happy to address them. I want to briefly address the summary judgment rulings as well. Depending on our establish that he was ineligible in truth and fact during his time at Duke and therefore not entitled to these protections, there are several counts that were thrown out as a result of the failure of the contract. Obviously, if the court determines that we get our contract claim back, then those counts should come back as well. There are two counts that were not determined on the existence of the contract, the fraud claim. And on that one, the district court ruled that we had not pled the theory of non-disclosure, which I pointed to in the record where we did plead that. It was not a new theory. And there is a duty for Williamson to disclose to his agent under the law because there's a fiduciary relationship. And even if there wasn't a fiduciary relationship between the principal and agent, which there was, the courts say that he had a duty to disclose because it was information that the other side that she could not know and discover. So that's cited in my brief. Finally, with respect to the marketing, the trade secret theft, again, the facts there generally, of course, determine that trade secrets are, whether or not something is a trade secret, can be a question for the jury, should be a question for the jury, or determine that these are not trade secrets as a matter of fact. So, I think the argument is that they would have inevitably gotten these agreements regardless. That is possible, but that should be for the finer of fact, Your Honor. The fact that perhaps they could have developed that on their own, here, there is evidence that they didn't. That they simply took the work that was done by Ms. Ford and just called up those people and said, give me the deal that you've already negotiated. But doesn't there have to be something unique or new about these trade secrets for them to be the subject of a claim on this front? Yes, and by the way, that's a jury question as to whether or not these, you know, they need to establish that, yes, they've created marketing relationships with all these entities. Remember, there was a shoe contract that they were negotiating with somebody that Gina Ford had a relationship with for $100 million to make his own shoe. There's no evidence that they had a relationship with that individual that they, and they didn't obtain that shoe contract for, by the way. So, I mean, there's definitely parts, components of that were unique, specifically to Gina Ford, and there's evidence that they turned around and did the exact same deal that had already been negotiated. So, it's not like they started from scratch and said, listen, whatever you were talking about with Gina, we're going to do something different. They just basically entered into the same deal. So, I'd like to save my time for rebuttal as far as any other questions. Thank you, Mr. Reid. Thank you. Mr. Kripp. Your Honor, and may it please the Court. Prime Sports flagrantly violated the Agents Act when they failed to register and failed to provide the requisite want-ins, and as a result, the contract is void. And if I could, I'd like to start with really the most straightforward path to affirm in Judge Diaz, which is the one that you set out, which is engages in, which is about her illegal conduct during the season while he's on the Duke team playing college basketball for Duke. The statute in Section 88D says that a contract resulting from conduct in violation of this section is a void. And that same Section 88A says that a person may not act as an athlete agent in the state in North Carolina without holding a certificate of registration, undisputed, that she never held the certificate of registration, never even applied, still doesn't have one. So then what does it mean to act as an athlete agent in the state? Statute defines that as well, says that a person is an athlete agent if they are an individual who, quote, directly or indirectly recruits or solicits a student athlete to enter into an agency contract and an individual who merely represents to the public that the individual is an athlete agent. District Court found it undisputed that she held herself out as an athlete agent and that the parties engaged each other during the season while he was still playing. And that's really all you need to know, right? Under any reasonable understanding of the term student-athlete, including the one that is defined in the text, of course he was a student-athlete. He was playing basketball for Duke wearing the Duke uniform at Cameron Stadium. He's at the absolute epicenter of the statutory definition. It has three prongs. A person who engages in is eligible to engage in or may be eligible in the future. So we only need one of the three prongs and engages in is just clear as day. And so the inquiry really can stop there. It doesn't matter how egregious the anyway. And none of that matters. No, none of that matters. Under the statutory definition, he's playing. He's playing. That's all you need to know. And I think actually this gets to a really important point, Judge Walker, that you were getting at, which is that under their interpretation of the act, there is literally no student who would be safe in asserting their rights under this statute, right? Because the whole point of the statute was to protect these young kids. They're often teenagers. Zion Williamson was a freshman in college. And the idea is to protect them against predatory agents who have this incredible incentive to lure them into unfavorable contracts. And so it is designed to protect them and to help level the playing field. But under their interpretation, even a predatory agent who violates every rule under the statute, they fail to register, they fail to provide the requisite warnings, and they lie to the student to lure them into a contract. They can turn around and then use this statute as a weapon to attack the reputation of the very student the act is designed to protect. And we have an amicus brief from the Players Association that tells you that this would decimate the act because it would create a profound disincentive against coming forward and asserting your rights because of the vulnerability to your reputation, which for many of these young players is literally their most valuable asset. I think maybe one important corollary of I think the sort of broad protective purpose of this statute, its prophylactic purpose with this broad definition of who is a student athlete, this statute is also very easy to comply with. All an agent needs to do when they are going to work for a college student or a high school student is register, provide the requisite warnings, and then not lie. And we allege that they violated all three of those requirements, and we didn't need to prove a third. We didn't need to prove the point that they lied to Williamson because the first two were undisputed, never disputed, that they didn't register and didn't provide the requisite warnings. And that was enough to provide us all the relief we sought in this case, which was to declare the contract invalid. I mean, just to respond to a couple of points that my friend on the other side makes, he talks a lot about the ability to raise an affirmative defense. We're here, we're litigating the issue right now. They raised it below, they raised it here, we're talking about it, is that the undisputed facts here are sufficient to establish that he's covered by the statute. He was playing. It's also undisputed, as he said, that the NCAA had affirmatively determined him to be covered by the statute, and I think that's really all you need to know. In your view, are there any instances in which an agent could challenge the NCAA's eligibility determination or the relevant institution? Under this statute, no. No. Under this statute, the only question is, is he eligible? I mean, there's three questions. Is he playing? That's the end of it. You don't even need to get into eligibility. Second, if he's not playing, but the NCAA has affirmatively found the player to be eligible, then that's the same as the end of the inquiry, right? Under the statute, it's eligible to engage in an intercollegiate sport, which is then defined to be a sport for which a national association establishes eligibility requirements, and then under the NCAA's own eligibility requirements, they decide eligibility. And of course, they're a private association. Duke is a private school. There's no state option. There's no basis under the statute for second-guessing their determination on eligibility, and in particular, on prominent ineligibility, right? Because even if you could hypothesize a situation where a court could adjudicate whether a rule violation had occurred, that wouldn't tell you what the consequence should be, right? And I think that's really peculiarly up to the NCAA to figure out, you know, how serious is the violation? Who is really at fault? How much is it the student or somebody else? Should the consequence be felt by the school or by the player? The warning on the face of the contract that is part of the statute doesn't really seem to have much nuance. It says, if you sign this contract, you will be ineligible. It doesn't seem to suggest that the NCAA has any discretion or the athlete has any hope of recouping eligibility. Do you think it's still a discretionary call? Yeah, definitely. I think the warning is just that, right? It's a warning, and I think it's, if anything, a little overly conscious. I mean, that's the warning today, even though under the sort of current rules about name, image, and likeness, there are situations in which a college student can engage an agent and still have their eligibility. And so the whole purpose of the notice requirement is to, one, trigger awareness that there is a potential consequence, and then trigger the 72-hour requirement, which I think very powerfully supports us, right? It's 72 hours where the student and the agent both have to move forward and bring the contract to the school so we can set this process into motion. And it's undisputed, of course, that none of that had played out at the time the parties engaged each other. I'm going to, I think, show my ignorance with respect to how this process works here, but I'll ask the question anyway. So let's talk about Zion Williamson. When Duke recruited him, are you saying that the NCAA made an affirmative determination that he was eligible to play basketball for Duke? In theory, isn't any student eligible to play varsity sports? No, so there is, yes, there's an affirmative determination. I believe this is all undisputed, page six of their reply brief. There's an affirmative determination at the beginning of the season. There's a process through the NCAA rules where there's an affirmative determination of eligibility at the beginning of the season. And then under Bylaw 12111, the school has a continuing obligation before each and every game to certify him again. And so we have an affirmative determination here, like, dozens of times during the course of the year. And it's undisputed that she even came to a game as part of this, you know, again, where he's on the court wearing the Duke uniform, a Duke student. So I think this is really just the absolute epicenter of a statute, and the district court got this exactly right. I think their argument, as I heard it, was not that there was an affirmative finding of eligibility by the NCAA, but the NCAA merely accepted Duke's and Zion Williamson's certification of his eligibility, which seems to not be an admission that the NCAA made an affirmative finding here. Well, Duke is the NCAA's delegate under the rules, right? So Duke, under the rules, is making the determination on the NCAA's behalf. And so that is the affirmative determination. I take their point that they're trying to sort of second guess the determination, as they put it, but that's not, the statute doesn't provide for that. It doesn't allow for that. The statute doesn't talk about what could have, should have, or, you know, or would have happened, right? It's much more straightforward, and I think in particular on the engages in prong, which is just clear as day. And I think, again, it's very important to the coverage of the statute that players who are playing are covered, right? Every student who's wanted to, needed to invoke this statute is a player who's on the cusp of going pro. It's a small subset of students who are playing college sports at this very elite level for whom this whole dynamic comes into play. And so their effort to say, well, oh, the player, he really intended to go pro. They all intend to go pro, right? This is like a lifelong dream, but a player does not lose their eligibility under the NCAA by wanting to go pro, right? There is a whole long formal process under the NCAA rules for how somebody can register for the draft and test the waters and go through the NBA draft combine, and 10 days after the combine, they can withdraw and go back to college without jeopardizing their eligibility. And again, it's undisputed that none of that had happened here. And I guess I think really more fundamentally, he was playing. So I'm glad you ended there because I just out of curiosity, does it, I believe this contract was signed post-March Madness after the University of Virginia Cavaliers won the national championship. And does that matter for purposes of whether or not he would, from your perspective, whether he was engaging in a collegiate sport? Does that timing matter? It does a little bit. No, it doesn't matter because it's a contract resulting from conduct in violation of the section. And so it wouldn't have mattered if she waited to sign the contract until after he'd already been drafted and signed by the Pelicans. The contract would still be illegal. So it's the fruits of her illegal conduct along the way. Yeah, but I guess what I'm asking is, does it matter for purposes of you're saying that you're sort of hanging your hat on the engages in portion of student athlete definition? Does that timing affect that portion of your argument? I'm saying no, because of the illegal conduct along the way, right during the season, which is undisputed. I mean, even if you were looking only at that later window, it still wouldn't change anything because he still would have been eligible and also potentially eligible in the future under the rules, but really none of that matters. So I may have asked this question earlier, but I guess it's a question of relative equity. So you're painting a picture of these predatory agents, but does it matter at all just how egregious a student athlete's conduct might have been before, for example, coming to Duke or any other school, if they did exactly what the other side says that Mr. Williamson did, does that matter at all? No, not at all. And think about the equities here, right? If the agent actually knew and believed of some kind of outrageous conduct in advance, she could have brought that to the attention of the NCAA and set this process into motion, right? The other thing an agent can do before recruiting a high school or college student is simply register and provide the requisite warnings, right? This is not hard. And instead, what we have is somebody who was recruiting somebody precisely because he was a college student on the cusp of going pro, which is everybody who's ever been covered by this statute, and then turning around and saying, oh, no, he's not a student athlete. Of course he was. That's what prompted all of this. So, I mean, I think, again, also maybe just to come back to the Players Association brief and the point that this would decimate the act. I mean, this is really at the absolute epicenter of the statute and any ordinary understanding of who is a student athlete and fits squarely within the definition. I think if there are no further questions, ask the court to affirm. I do. I do have. Sorry, Chief Judge. I have one additional question. Could you, on the trade secrets summary judgment piece of this, because I believe what I, the argument that I've heard thus far is essentially that these were jury questions and that essentially the district court usurped the ability of the trier fact here to make those determinations and that they had sufficiently alleged enough as to the trade secrets and fraud claims. What's your perspective on that? Yeah. So, I mean, a couple of responses, only to a single paragraph of their reply brief, right, to the trade secrets claim. And the only thing they mention is the so-called marketing plan. I would urge the court to look at the marketing plan. This is an incredibly thin document. It's a short PowerPoint with almost no content. And it was incumbent on them to come forward and identify what is the information in the marketing plan that is our trade secret. And what they hang their hats on, what they came forward were the ideas one plus one equals three and the idea that he should be the first Zion, right? And the district court took one plus one equals three back at the time of the Greeks to Aristotle. And then on the first Zion, that's a phrase that he was using in high school long before prime sports came on the scene. And, you know, it's also, I think, just a familiar sort of trope in sports marketing. People use language like that. And so I think the district court correctly saw that there was no disputed material fact on that. Thank you. Thank you. Thank you, Mr. Tripp. Mr. Eaton. So the procedural posture here is important because, remember, this was judgment on the Zion Williamson declaring on April 15th that he was going into the NBA draft. The only conduct in the pleadings is signing a contract on April 20th. He was not engaging in college basketball at that time. The season was done. I'm going to the draft. These are the pleadings. That's what matters here. The NBA National Basketball Players Association talked about this and got the contract. That's absolutely not the case. Under the NIL regimen that you have now, there essentially are no improper benefits that are going to come in and prevent you from losing your eligibility. You can go out and have an agent and take money, and it's fine. So this is a different time that we're talking about. 2019 is not 2023. This case is not going to have any impact on that. It's talking about how every single player who comes in contact with one of these contracts is getting ready to go to the pros. That's not the case. This is a marketing contract, not an agent contract for going into the sport, representing a contract with a team. This is a marketing contract. Any number of agents can go to a student who's playing college sports who's never going to go to the pros and say, I can get you money. Sign this contract with me. That's what this is intended to protect. Those students as well, amateurs, they're going to be amateurs forever, and they may lose their amateur status if they sign a contract for marketing, even though they may never go pro. So it's not just designed for players who are on the cusp of going pro. It's not designed for those players because they don't need the protection. Zion Williamson was not coming back. Mr. Tripp said, what is the consequence? Is it discretionary? It's not discretionary. As you pointed out, Judge Diaz, if you sign a contract, you are ineligible. That's NCAA law. Cited cases in my brief where it talks about violations. If you take improper benefits, you are ineligible. Period. End of story. It's not difficult to look at the NCAA rules and say, if you do any of these things, you will lose your eligibility. That's all we're asking for the right to do, is to allow the court or the jury to apply those rules and say, we've given you evidence to establish that he has violated each of these NCAA rules prior to ever setting foot on a court at Duke. Therefore, he's permanently ineligible as far as the statute has defined a student athlete. And therefore, the statute doesn't apply to him. Our contract wasn't void. It was never intended to apply to him. So, even if the second sentence was intended to deal with two sport athletes, it doesn't, you can't read it in a way that it doesn't apply to a single sport athlete as well. It says if you're permanently ineligible to participate in a sport, you're not a student athlete for that sport. Period. If you're ineligible to be a college basketball player, you're not a student athlete for college basketball. I mean, that's what the language, the clear language of the statute says. And again, we're not supposed to be looking behind it. He wasn't engaging in it at the time he signed the contract. And we had the right to argue that he was ineligible. He mentioned that Gina Ford could have reported him to the NCAA. Why would she do that? What possible basis for that would there be? She was signing into marketing because he's declared that he's going into the NBA draft. Did she not have a right to rely on that assertion that he put out to his millions of Instagram followers to say, I'm done. I'm going to be the number one draft pick. They're asking to penalize her for relying on his statement. This is not an unscrupulous agent preying on some naive young man. Williamson is an industry unto himself. This is CAA trying to get John Williamson out of this base and this technicality. And yes, Gina did not register and she did not sign it because she didn't believe she had to. She had just signed the number one draft pick the year before, DeAndre Ayton. He had no problems there. So she was just under the assumption, hey, this is going to be easy. CAA made it hard. And now we're here today because the statute and the district court's ruling that you can't look behind it, which is contrary to every other part of the statute. I do want to raise one other section of the statute, which is the section that allows schools to sue former athletes if they sanction themselves because of the conduct of the athlete. That part of the statute, and again, you must read the entire statute in Parameteria, requires a finder of fact to determine whether that action was reasonable or not. And that applies to students who were never declared ineligible by the NCAA by definition. And so part of that determination would be, okay, well, was your action reasonable because they did in fact engage in conduct that would have rendered them ineligible and you would have been sanctioned for that. So is what you did reasonable? So how is it that that can be questioned in one part of the statute, but not the other? Statutes don't work like that. So we respectfully request that the court reverse the finding of judgment on pleadings, allow us to plead our affirmative defense and prove our affirmative defense and amend the complaint to allege the allegations of the violations and reverse the summary judgment. Thank you for your time, Garth. Thank you, Mr. Eaton. Thank you both for your arguments this morning. We're going to come down, re-counsel and then take a short recess before moving to our final case.
judges: Albert Diaz, William B. Traxler Jr., Jamar Kentrell Walker